## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF IOWA
## WESTERN DIVISION

SANTOS ROSALES-MARTINEZ,

    Petitioner,

vs.

NICK LUDWICK,

    Respondent.

No. C13-4044-LTS

**ORDER ON OBJECTIONS TO THE
MAGISTRATE JUDGE'S REPORT
AND RECOMMENDATION**

_____

This matter is before me on a Report and Recommendation (Doc. No. 49) in which the Honorable C.J. Williams, Chief United States Magistrate Judge, recommends that petitioner Santos Rosales-Martinez' petition (Doc. No. 1) for relief pursuant to 28 U.S.C. § 2254 be denied with prejudice. Both parties have filed objections (Doc. Nos. 53, 54).

## I.  *STANDARD OF REVIEW*

A district judge must review a magistrate judge's R&R under the following standards:

> Within fourteen days after being served with a copy, any party may serve and file written objections to such proposed findings and recommendations as provided by rules of court. A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge may also receive further evidence or recommit the matter to the magistrate judge with instructions.

28 U.S.C. § 636(b)(1); *see also* Fed. R. Civ. P. 72(b). Thus, when a party objects to any portion of an R&R, the district judge must undertake a de novo review of that portion.

Any portions of an R&R to which no objections have been made must be reviewed under at least a "clearly erroneous" standard. *See, e.g.*, *Grinder v. Gammon*, 73 F.3d 793, 795 (8th Cir. 1996) (noting that when no objections are filed "[the district court judge] would only have to review the findings of the magistrate judge for clear error"). As the Supreme Court has explained, "[a] finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Anderson v. City of Bessemer City*, 470 U.S. 564, 573-74 (1985) (quoting *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948)). However, a district judge may elect to review an R&R under a more-exacting standard even if no objections are filed:

> Any party that desires plenary consideration by the Article III judge of any issue need only ask. Moreover, while the statute does not require the judge to review an issue de novo if no objections are filed, it does not preclude further review by the district judge, *sua sponte* or at the request of a party, under a de novo or any other standard.

*Thomas v. Arn*, 474 U.S. 140, 150 (1985).


## II.    THE R&R

### A.  Procedural History and Facts

Judge Williams set out the procedural history and relevant facts in his R&R. *See* Doc. No. 49 at 2-11. The parties do not challenge Judge Williams' factual findings. Accordingly, I will repeat that information only to the extent necessary to address the relevant issues.

Rosales-Martinez is an inmate at the Iowa State Penitentiary. In 2002, an Iowa state court jury found him guilty of sexually abusing the young daughter of his (then)

girlfriend/wife.[1]  Rosales-Martinez appealed his conviction to the Iowa Court of Appeals, which affirmed.  *State v. Rosales-Martinez*, 666 N.W.2d 621 (Table), 2003 WL 21229134 (Iowa Ct. App. 2003).  On April 27, 2004, he filed a *pro se* application for postconviction relief (PCR).  On December 10, 2010, the PCR court denied relief on all grounds.  The Iowa Court of Appeals subsequently affirmed that denial.  Specifically, the Iowa Court of Appeals held that Rosales-Martinez's trial counsel was not ineffective for failing to challenge alleged prosecutorial misconduct or for stipulating to protective order regarding the testimony of the victim.  *See Rosales-Martinez v. State*, 810 N.W.2d 26 (Table), 2011 WL 6740152 (Iowa Ct. App. 2011).

The Iowa Supreme Court denied further review on February 14, 2012, and procedendo issued on February 21, 2012.  Rosales-Martinez then filed a second PCR petition on August 23, 2012, which was denied on January 14, 2013.  Rosales-Martinez mailed his 28 U.S.C. § 2254 Petition on May 10, 2013, and it was filed on May 13, 2013.  *See* Docket No. 1.  The respondent filed motions to dismiss (Doc. Nos. 12, 25), arguing that Rosales-Martinez's claims were procedurally and time barred.  The Honorable Donald E. O'Brien, Senior Judge, denied the motions to dismiss, stating that an evidentiary hearing should be conducted on the issue of whether the statute of limitations had been equitably tolled.  Doc. No. 30.  Judge O'Brien ordered that the merits of the case be briefed contemporaneously with the tolling issue.  *Id.*, at 16.  In his merits brief, the respondent waived the statute of limitation issue, stating:

> Respondent reasserts that this petition is barred by the statute of limitations. Yet, in light of the court's earlier order rejecting Respondent's motion to dismiss and ordering briefing on the merits, judicial economy would be best served by denying the petition on the merits and foregoing a hearing.

---

[1] Rosales-Martinez was tried twice.  The first trial ended in a hung jury.  Doc. No. 49 at 7.  He was convicted following the second trial.

Doc. No. 42 at 38.  Accordingly, Judge Williams addressed the merits of the parties' arguments, decided that an evidentiary hearing was not warranted and recommended dismissal of the petition.

## B.     Applicable Standards

Judge Williams set out the correct standards regarding Section 2254 habeas relief. In short, "[t]he writ of habeas corpus stands as a safeguard against imprisonment of those held in violation of the law." *Harrington v. Richter*, 562 U.S. 86, 91 (2011).  "As amended by [the Antiterrorism and Effective Death Penalty Act of 1996] AEDPA, 28 U.S.C. § 2254 sets several limits on the power of a federal court to grant an application for a writ of habeas corpus on behalf of a state prisoner." *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011).  28 U.S.C. § 2254(a) provides that a federal court  shall entertain an application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States.  A federal court's review of a state court decision under § 2254 is deferential.   *Lomholt v. Iowa*, 327 F.3d 748, 751 (8th Cir. 2003).  A state court decision on the merits should not be overturned unless it:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1)-(2).  Considering the merits of habeas claims, the Eighth Circuit has stated that:

> The "contrary to" clause and "unreasonable application" clause of § 2254(d)(1) have "independent meaning." *See Williams v. Taylor*, 529 U.S. 362, 405, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000).  The "contrary to" clause "suggests that the state court's decision must be substantially different from the relevant precedent of [the Supreme] Court." *Id*. (listing "diametrically different," "opposite in character or nature," or "mutually

opposed" as definitions of "contrary"). An "unreasonable application" of Supreme Court precedent occurs when a state court correctly identifies the governing legal standard but either unreasonably applies it to the facts of the particular case or unreasonably extends or refuses to extend the legal standard to a new context. *See id*. at 407, 120 S.Ct. 1495. In determining whether the state court unreasonably applied Supreme Court precedent, our inquiry is an objective one. *See id*. at 409–10, 120 S.Ct. 1495

*Munt v. Grandlienard*, 829 F.3d 610, 614 (8th Cir. 2016), cert. denied, 137 S. Ct. 821 (2017).

28 U.S.C. § 2254(b)(1)(A) prohibits a grant of habeas relief on behalf of a person in state custody unless that person has "exhausted the remedies available in the courts of the State."

"The exhaustion requirement of § 2254(b) ensures that the state courts have the opportunity fully to consider federal-law challenges to a state custodial judgment before the lower federal courts may entertain a collateral attack upon that judgment." *Duncan v. Walker*, 533 U.S. 167, 178–79, 121 S. Ct. 2120, 150 L.Ed.2d 251 (2001). The requirement prevents a federal court from granting a habeas petition based on a constitutional violation that could be redressed adequately by pursuing an avenue of state relief "still open to the habeas applicant at the time he files his application in federal court." *Humphrey v. Cady*, 405 U.S. 504, 516, 92 S.Ct. 1048, 31 L.Ed.2d 394 (1972) (*citing Fay v. Noia*, 372 U.S. 391, 435, 83 S.Ct. 822, 9 L.Ed.2d 837 (1963)).

*Grass v. Reitz*, 643 F.3d 579, 584 (8th Cir. 2011). Under Iowa's system, a petitioner must first file a PCR petition in the Iowa District Court. If his challenge is denied he must:

appeal to the supreme court. Iowa R.App. P. 6.1(1) (2007); *see Effler*, 769 N.W.2d at 883. The supreme court may then choose to transfer any case (except a case in which state law grants that court exclusive jurisdiction) to the court of appeals. Iowa Code §§ 602.4102(2), 5103(3); Iowa R.App. P. 6.401(1) (2007); *see Effler*, 769 N.W.2d at 883. "Once a transfer has been made, the supreme court no longer has jurisdiction of the matter, unless a party seeks further review of the court of appeals decision." *Effler*, 769 N.W.2d at 883; see Iowa Code § 602.4102(2). The supreme court regains

jurisdiction only if it grants an application for further review. *Effler*, 769 N.W.2d at 883; Iowa Code § 602.4102(2), (4); see Iowa R.App. P. 6.402 (2007). Nothing in Iowa law indicates that an application for further review in the supreme court is an extraordinary measure outside of the state's established appellate review process. *Cf. Akins v. Kenney*, 410 F.3d 451, 454 (8th Cir. 2005) (analyzing Nebraska's appellate review process); Dixon, 263 F.3d at 779 (analyzing Missouri's appellate review process). Therefore, an Iowa prisoner whose appeal is deflected to the Iowa Court of Appeals must file an application for further review in the Supreme Court of Iowa to exhaust his claims properly in the state courts.

*Welch v. Lund*, 616 F.3d 756, 758–59 (8th Cir. 2010).

Many habeas appeals raise claims of ineffective assistance of counsel under the well-known *Strickland* standard. For a petitioner to succeed in an ineffective assistance of counsel claim, the federal court must find that a state court's application of [*Strickland v. Washington*, 466 U.S. 668, 689, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984)] was unreasonable in order to grant habeas relief. *Harrington v. Richter*, 562 U.S. 86, 101 (2011). This is a highly deferential inquiry because "[a] state court must be granted a deference and latitude that are not in operation when the case involves review under the *Strickland* standard itself." *Id*. "Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard." *Id*. at 105. Therefore, "even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id*. at 102 (*citing Lockyer v. Andrade*, 538 U.S. 63 (2003)). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Id*. at 101 (quoting *Yarborough v. Alvarado*, 541 U.S. 652 (2004)).

The petitioner bears the burden of showing that the state court's ruling was "so lacking in justification that there was an error well understood and comprehended in

existing law beyond any possibility for fair minded disagreement." *Richter*, 562 U.S. at 103. "Section 2254(d) reflects the view that habeas corpus is a 'guard against extreme malfunctions in the state criminal justice systems,' not a substitute for ordinary error correction through appeal." *Id.* (*quoting Jackson v. Virginia*, 443 U.S. 307, 332, n. 5 (1979) (Stevens, J., concurring in judgment)).

## C.     *Judge Williams' Recommendations*

Rosales-Martinez alleges four grounds for relief: (1) a violation of his Sixth Amendment right to confrontation when the court allowed the child victim to testify by closed-circuit television; (2) prosecutorial misconduct; (3) ineffective assistance of counsel; and (4) actual innocence. Judge Williams addressed each issue.

### 1.     *Closed-Circuit TV*

Regarding the first alleged ground for relief, Judge Williams wrote:

> The question before this court, on habeas review, is whether the State court's decision allowing the child victim to testify by closed-circuit television was contrary to this Supreme Court precedent or was based on an unreasonable determination of the facts in light of the evidence. The State court's decision was neither contrary to Supreme Court precedent, nor was it based on an unreasonable determination of the facts. As related above, the court heard testimony from a social worker and the child victim's foster mother that the victim was afraid of petitioner, that she was scared "spitless" on one occasion when she was in his presence, that she was in terror of petitioner, and that that fear would impair her ability to testify even in the context of a deposition where he could view her through a one-way mirror. The court reasonably relied on this record to determine the victim would have the same fear of petitioner when she testified at trial. Nothing in the record suggests that the victim's fear arose from the prospect of testifying in the courtroom, or in front of a jury, or in response to being questioned by lawyers. Rather, the record aptly supports the conclusion that her real and significant fear was of petitioner personally, regardless of the setting in which she would encounter him. . . I conclude that the court did not violate petitioner's right to confront his accuser because there was

an adequate showing that the victim would be traumatized by testifying with petitioner present and that it would have adversely affected her testimony.

Doc. No. 49 at 16, 17. Judge Williams then considered whether *if* there had been error in letting the child testify via closed-circuit television, the error was harmless. He wrote:

> Petitioner is not entitled to relief if the "guilty verdict actually rendered in this trial was surely unattributable to the error." *Sullivan v. Louisiana*, 508 U.S. 275, 279 (1993). . . The parties' briefs are of no help to the court in making this determination. Petitioner boldly claims that, absent the victim's testimony, the remaining evidence was "'scant' at best." Doc. 39, at 12. Respondent equally boldly proclaims that "[e]ven without considering the victim's testimony, sufficient evidence existed in the record to support the verdict . . . ." Doc. 42, at 22. Neither party, though, cited the record or summarized the remaining evidence to support these assertions. . . Removing the victim's testimony from consideration, therefore, I conclude the State's remaining evidence was not scant, and a reasonable jury could have concluded it was sufficient to establish the elements of the offense. The remaining evidence was not, however, overwhelming. The only evidence of sexual abuse was the hearsay evidence provided by the social worker. If the court erred in permitting the victim to testify by closed-circuit television, then it was not harmless error because the court concludes that the guilty verdict rendered in this case was surely unattributable to the error.

Doc. No. 49 at 17-18, 19.

### 2. *Prosecutorial Misconduct*

Judge Williams then considered Rosales-Martinez' claim of prosecutorial misconduct. Rosales-Martinez alleged that the prosecutor elicited opinion testimony from Susan Gavin, a social worker, and that this testimony violated a pretrial evidentiary order regarding physical evidence. First noting that there is a question of whether Rosales-Martinez even raised the issue in his petition, Judge Williams stated:

> a liberal reading of the Second Amended Petition could support petitioner's argument that he pled a claim of ineffective assistance of counsel in relation to the allegation of prosecutorial misconduct.

The problem for petitioner, however, is that petitioner never raised an allegation of ineffective assistance of counsel in relation to this claim of prosecutorial misconduct in State court. On direct appeal, petitioner alleged the trial court erred in failing to grant his motion for a mistrial based on the alleged misconduct. *Rosales-Martinez*, 2003 WL 21229134, at *1. He did not allege his attorney was ineffective in some way in relation to this claim. In post-conviction litigation, petitioner alleged his counsel was ineffective for failing to object to alleged prosecutorial misconduct, but only in relation to the elicitation of testimony by Officer Cole, the prosecutor's questioning of the victim's foster mother, the impeachment of petitioner with prior inconsistent statements, and the questioning of petitioner in relation to being present throughout trial. *Rosales-Martinez*, 2011 WL 6740152, at *7-9. Indeed, even in the briefing before this court, petitioner does not explain how his attorney was allegedly ineffective in relation to this particular claim of prosecutorial misconduct. Accordingly, I find petitioner has procedurally defaulted any claim that his attorney was ineffective in relation to alleged prosecutorial misconduct arising from the questioning of the social worker.

Doc. No. 49 at 21-22. Judge Williams then made an alternative finding that even if the claim was not procedurally defaulted, and was considered on its merits, it still failed because, among other things, any error was harmless:

the district court struck the question and that answer and instructed the jury to disregard it. App. 281. Jurors are presumed to follow limiting instructions. *United States v. Gardner*, 396 F.3d 987, 993 (8th Cir. 2005) (holding that courts presume that juries will follow limiting instructions). *See also Richardson v. Marsh*, 481 U.S. 200, 211 (1987) ("The rule that juries are presumed to follow their instructions is a pragmatic one, rooted less in the absolute certitude that the presumption is true than in the belief that it represents a reasonable practical accommodation of the interests of the state and the defendant in the criminal justice process.").

Doc. No. 49 at 24-25.

### 3.    *Ineffective Assistance of Counsel*

Judge Williams then considered Rosales-Martinez' next claim of ineffective assistance of counsel:

> Petitioner argues that his trial counsel was ineffective when he failed to object to testimony from Officer Cole relating petitioner's invocation of his rights to counsel and to remain silent.  Doc. 39, at 16-17.  Petitioner also objects to the prosecutor's cross examination of him where the prosecutor pointed out that petitioner had the benefit of hearing other witnesses testify.  Doc. 39, at 17-18.  Petitioner argues that "either individually or considered cumulatively," these instances of ineffective assistance of counsel warrant relief. Doc. 39, at 16. . .
>
> With regard to Officer Cole's testimony, petitioner cites *Doyle v. Ohio*, 426 U.S. 610 (1976), for the proposition that the prosecutor's examination violated his Sixth Amendment rights.  Doc. 39, at 18.  I agree that the prosecutor's questions were improper, but that is not the question for this court to decide. Rather, on habeas review, this court's task is to determine if the State court's decision that trial counsel was not ineffective was contrary to, or involved an unreasonable application of, federal law. . . . Petitioner has not explained how the State court's decision was contrary to, or an unreasonable application of, this standard.  The State court's factual finding that trial counsel did not object to the testimony as a matter of trial strategy is not an unreasonable conclusion based on the attorney's testimony, so will not be disturbed by this court on habeas review.  I find that the State court's conclusion that trial counsel was not unconstitutionally ineffective was not an erroneous decision under the *Strickland* standard.

Doc. No. 49 at 25-26, 26-27.  Similarly, Judge Williams found that Rosales-Martinez had failed to show ineffective assistance in either (a) his counsel's failure to object to questions posed to Rosales-Martinez on cross-examination or (b) alleged cumulative errors.

### 4.    *Actual Innocence*

Finally, Judge Williams considered Rosales-Martinez' claim of actual innocence. Judge Williams noted the uncertain case law regarding an actual innocence claim and

further noted that Rosales-Martinez presented an unclear factual basis for such a claim. Judge Williams concluded:

> Petitioner did allege the recantation of testimony by his wife was the basis for a new trial . . . The State district court judge heard petitioner's wife testify at a hearing on his motion for a new trial, found her testimony lacked credibility, and found it was contradicted by other evidence. App. 144-45. The record also shows that petitioner's wife had made other, similar prior statements in petitioner's favor that came out in evidence at trial.

> I find the witness's recantation would only have contributed marginally to the attack petitioner made at trial regarding her credibility. *See Cox v. Burger*, 398 F.3d 1025, 1031 (8th Cir. 2005) (rejecting an actual innocence claim where the recanted testimony would only further impeach a witness and not establish factual innocence). Furthermore, the State court was correct that the evidence is not "newly discovered." *See Schlup*, 513 U.S. at 324 (requiring the evidence of innocence be newly discovered and "not available at trial through the exercise of due diligence"). Assuming the Supreme Court would recognize an actual innocence claim as an independent basis for habeas relief, and setting aside petitioner's failure to present this claim in the State courts, I find that petitioner could not meet the extraordinarily high burden that would exist to show his actual innocence.

Doc. No. 49 at 30-31.

## III.    DISCUSSION

### A.    Closed-Circuit Television

### 1.    Rosales-Martinez' Objection

Rosales-Martinez argues that he was prejudiced because the trial court allowed the child victim to be examined via closed-circuit television. He argues that this violated the test set out in *Maryland v. Craig*, 497 U.S. 836, 857 (1990). Rosales-Martinez also argues that Judge Williams erred in finding that the claim was procedurally defaulted:

> Petitioner submits that the failure of counsel at the state court level to adequately address and preserve error on this issue constitutes ineffective assistance of counsel, thus excusing the default. Recently the Supreme

Court noted: "[I]neffective assistance of counsel on direct appellate review could amount to "cause," excusing a defendant's failure to raise (and thus procedurally defaulting) a constitutional claim." *Trevino v. Thaler*, 133 S. Ct. 1911, 1917, 185 L. Ed. 2d 1044 (2013)(emphasis in original). Therefore, Petitioner asserts that his counsel's ineffective assistance at trial constitutes "cause", allowing him to bring his Sixth Amendment claim directly to the Court. The Report and Recommendation addressed this issue, and simply noted that because it was not erroneous to have the alleged victim testify via closed circuit television, there was no prejudice to the alleged ineffective assistance. (R&R p. 21). As noted above, Petitioner submits that it was erroneous, and thus, there was prejudice under Strickland which warrants excusing the procedural default.

Doc. No. 53 at 8.

### 2. *Respondent's Objection*

The respondent objects to Judge Williams' alternative finding that *if* the state court erred in allowing the closed-circuit television testimony, that error was not harmless. Respondent argues:

Although Judge Williams concluded Rosales procedurally defaulted this claim in Iowa's courts and that those courts did not violate petitioner's right to confront his accuser, the judge went on to analyze whether any such error would have been harmless. In undertaking this analysis, Judge Williams applied the harmless error analysis applicable on direct review instead of the distinct harmless error analysis prescribed for habeas review. . . Judge Williams applied *Chapman*-style harmless error review in the R&R. Document 49 p. 17-18 (citing *Sullivan v. Louisiana*, 508 U.S. 275, 279 (1993) (citing *Chapman*)).

Doc. No. 54 at 2-3. Respondent further states:

the United States Supreme Court has explicitly held that such review is not proper in a collateral attack like a habeas proceeding. "For reasons of finality, comity, and federalism, habeas petitioners 'are not entitled to habeas relief based on trial error unless they can establish that it resulted in "actual prejudice."'" *Davis*, 135 S. Ct. at 2197 (quoting *Brecht v. Abrahamson*, 507 U.S. 619 (1993)). In this type of review, the burden rests with the habeas petitioner, not with the State. "Overturning final and

presumptively correct convictions on collateral review because the State cannot prove that an error is harmless under *Chapman* undermines the States' interest in finality and infringes upon their sovereignty over criminal matters." *Brecht*, 507 U.S. at 637.

Doc. No. 54 at 3. Respondent concludes:

> the prejudice necessary to overcome a procedural default is at least as onerous as that necessary to establish ineffective assistance of counsel. *Armstrong v. Kemna*, 590 F.3d 592, 606 (8th Cir. 2010) (holding actual prejudice standard is higher); *Clemons v. Luebbers*, 381 F.3d 744, 752-53 n.5 (8th Cir. 2004) (noting the standards may be similar). And in either case, the petitioner carries the burden to show actual prejudice. If Rosales could not show a reasonable probability of a different outcome under *Strickland*, he cannot show the actual prejudice demanded by *Brecht*.

Doc. No. 54 at 4.


### 3. *Analysis*

#### a. *Confrontation Clause*

As noted above, Judge Williams found that the confrontation clause claim was procedurally defaulted and, in the alternative, fails on its merits. He found that the claim is procedurally barred because Rosales-Martinez failed to preserve error:

> At the first trial, petitioner's counsel did not object to the victim testifying by way of closed circuit television. Rather, petitioner's counsel asked for certain conditions, such as, requiring the victim be told the nature of the proceedings, that petitioner could see her, and that an interpreter be present to aid petitioner. PCR App. 11-12. At the second trial, petitioner renewed his objections. App. 146-50. On direct appeal, the Iowa Court of Appeals found petitioner had not properly preserved this issue for appeal. Applying a state procedural rule, it refused to consider the issue on direct appeal. *Rosales-Martinez*, 2003 WL 21229134, at *2. As a result, petitioner procedurally defaulted this claim. *See Coleman v. Thompson*, 501 U.S. 722, 729 (1991) (holding that federal courts will not review an issue on habeas review where the petitioner failed to comply with state procedures).

Doc. No. 49 at 19-20.

Judge Williams is correct that at the very outset of his appeal process, Rosales-Martinez presented his confrontation clause claim to the Iowa appellate courts. The Iowa Court of Appeals stated:

> We conclude Martinez has failed to preserve this issue for our review. Prior to A.C.'s pretrial deposition, Martinez stipulated to the use of a one-way mirror between himself and A.C. Then, prior to A.C.'s testimony at trial, the State moved for a protective order allowing her to testify by closed circuit television. In Martinez's resistance he only objected to such a procedure unless certain steps were taken to protect his confrontation rights, such as advising A.C. of the nature of the proceedings, informing her Martinez will be able to see and hear her, and providing him with an interpreter. At trial, the court noted the parties had advised that there was no objection to presenting A.C.'s testimony by closed circuit television. Martinez's resistance and other "objections" did not preserve error on this issue.

*Rosales-Martinez*, 2003 WL 21229134 at *2. However, I do not agree with Judge Williams' finding that the Iowa Court of Appeals was correct. Earlier in the R&R, Judge Williams noted:

> Prior to the victim testifying, the court held a hearing, outside the presence of the jury, regarding the State's request to have her testify by closed-circuit television. App. 146-51. The State relied on the record made during the June 11, 2001, evidentiary hearing, arguing it established that the victim would suffer anxiety and trauma were she required to testify in front of Petitioner. <u>Petitioner resisted the State's request</u>, but indicated that he understood the court's ruling on July 6, 2001.

Doc. No. 49 at 7 (emphasis added). The record supports Judge Williams' initial finding that, contrary to the ruling of the Iowa Court of Appeals, Rosales-Martinez objected to the use of closed-circuit television during the trial.

The series of events leading to the child's testimony at trial is complex. Having the child testify behind a two way mirror was first discussed in the context of a jointly proposed deposition. After a hearing, the state court judge ruled as follows:

> The Court specifically finds that A.C. would suffer serious trauma caused by testifying in the physical presence of the defendant and that it would impair A.C.'s ability to communicate and that the protective measures stipulated to by the parties endorsed by the Court are necessary to protect A.C. from trauma. *See* [*Maryland v. Craig*, 497 U.S. 836, 857, 110 S.Ct. 3157, 111 L.Ed.2d 666 (1990)]. The Court finds and the parties stipulate that the defendant shall remain behind a one-way mirror where he can see and hear A.C. but that A.C. cannot hear nor see defendant.

Doc. No. 34-3 at 62. The state then filed a motion for a protective order asking that the child's testimony at trial be taken via closed-circuit television based on the court's previous finding about the deposition. Doc. No. 34-3 at 10-11. Rosales-Martinez resisted that motion, but did not specifically cite confrontation clause concerns using the *Craig* framework. Doc. No. 34-3 at 64-65. There is no clear resolution to this issue in the materials supplied by the parties. However, there is a reference to the motion for protective order in the trial transcript, with the parties representing to the trial judge that a previous judge had granted it. *See* Doc. No. 34-1 at 85-89. Additionally, based on the parties' representations and the findings of the Iowa Court of Appeals, it seems that the child testified via closed-circuit television during the first trial.

During the second trial, the judge met with the parties outside the presence of the jury to discuss the child's testimony. The following exchange (edited for clarity) occurred:

> The Court: The prosecuting attorney has advised the court that he intends to call the victim [A.C.], who is a minor, . . Nine years of age, to testify on behalf of the state. The parties have advised the court that there will be no objection to presenting the minor victim's testimony to the jury by closed-circuit television, pursuant to Iowa Code Section 915.38.
>
> . . .
>
> The Court: Mr. Murray, on behalf of the defendant, do you agree to the implementation of this procedure to present the testimony of [A.C.] to the jury?

15

Defense Counsel (Mr. Murray): Pardon me, your honor. I am sorry, your honor. Your honor, I would defer to the court's ruling on July 6th of 2001, which addressed this issue in the form of a deposition of [A.C.], and I feel that the court's findings in that ruling apply here. So with respect to any additional hearing on the findings, your honor, we --we stipulate that there is no need for that, that there has been a hearing on this and the court has previously made sufficient findings. Of course, I want it to be known that defendant disputed that issue at the time.

. . .

The Court: Okay. Do you --on behalf of the defendant, do you have any objection to implementing the [closed-circuit television] procedure for having the minor witness [A.C.] testify by closed-circuit television with her testimony being viewed by the jury in open court?

Defense Counsel: As representative for the defendant, your honor, we agree to be bound by the findings of the court in July of 2000, which were exactly --2001, which were exactly on point, as far as the issue today. We do not object to reimplementation and to be bound by that ruling, essentially requiring the same thing today. Your Honor, with respect to separating the witness from the jury, though, we previously voiced our objection and were --and the court found against us. So if you are asking us that question, I am afraid we have to say we object, but we feel that the court has already ruled on this issue in this case, and we do not believe that there is anything more to be heard and feel that the ruling in July of 2001 has handled the issue. (emphasis added)

. . .

The Court: Anything further from you, Mr. Murray?

Defense counsel: . . . Two things on that, your honor. The first thing is as representative for my client, preserving his rights on appeal, he needs to continue to object to the findings that were made in July of 2001, but, on the other hand, we fully understand that the court can take notice of those findings, ruling in the case and should apply to Mr. Kimble's motion. So I will go on the record there, as we did prior to the first trial.

The Court: The court has heard the parties on the issue of presenting the testimony of the minor child [A.C.] to the jury in this case. The court finds it is necessary to protect the minor child [A.C.] from trauma caused by

> testifying in the physical presence of the defendant in open court.  It is
> therefore ordered that the testimony of the minor child [A.C.] will be taken
> in a room other than the courtroom and will be televised live by closed-
> circuit television for viewing --for viewing by the jury in the courtroom.

Doc. No. 34-1 at 85-89.  Thus, during the second trial Rosales-Martinez clearly objected

to allowing the child to testify via closed-circuit television.  His counsel specifically

referenced the previous order employing the *Craig* framework to allow the child to be

deposed via a two way mirror and stated, "I am afraid we have to say we object."

Further, regardless of the procedural history, the judge presiding over the second trial in

no way found that Rosales-Martinez had waived his objection.  Rather, the judge made a

new, specific finding that using the two way closed-circuit television was "necessary."[2]

Thus, the ruling by the Iowa Appeals Court that Rosales-Martinez had waived his Sixth

Amendment claim is suspect, at best.

Ultimately, however, I need not determine whether the confrontation clause claim

was procedurally defaulted because I agree with Judge Williams that the claim fails on

its merits.   The Eighth Circuit has explained:

---

[2] Under Iowa law, an evidentiary issue must be preserved at trial; merely raising it during pretrial
matters does not preserve it.  *See State v. Tangie*, 616 N.W.2d 564, 568 (Iowa 2000) ("error
claimed in a court's ruling on a motion in limine is waived unless a timely objection is made
when the evidence is offered at trial. *State v. Edgerly*, 571 N.W.2d 25, 29 (Iowa App. 1997)
(*citing State v. Davis*, 240 N.W.2d 662, 663 (Iowa 1976)).").  Accordingly, the unknown twists
this issue took prior to the second trial are irrelevant because the court allowed defense counsel
to make timely objections during the second trial.  Additionally, that objection was "sufficiently
specific" because Rosales-Martinez invoked his argument from the underlying written ruling that
the court ultimately relied on.  *State v. Mark*, 286 N.W.2d 396, 410 (Iowa 1979); *see also
Knowlton v. Grinnell Select Ins. Co.*, 880 N.W.2d 518 (Iowa Ct. App. 2016) (unpublished).
Finally, much of the discussion the respondent relies on to show that Rosales-Martinez did not
properly object was simply Rosales-Martinez' attempt to make sure that *if* the closed-circuit
television was used, its use complied with Iowa Code § 915.38.

The Confrontation Clause of the Sixth Amendment provides, "In all criminal prosecutions, the accused shall enjoy the right ... to be confronted with the witnesses against him." In *Maryland v. Craig*, 497 U.S. 836, 857, 110 S.Ct. 3157, 111 L.Ed.2d 666 (1990), the Supreme Court held that the Confrontation Clause did not bar the Maryland trial court from permitting a victim of child abuse to testify from outside the courtroom by closed-circuit, one-way television provided "the essence of effective confrontation" was preserved and the court made "a proper finding of necessity." The Supreme Court carefully defined a case-specific finding of necessity, requiring the trial court to find (i) that use of the closed-circuit television procedure "is necessary to protect the welfare of the particular child witness," (ii) that "the child witness would be traumatized, not by the courtroom generally, but by the presence of the defendant," and (iii) "that the emotional distress suffered by the child witness in the presence of the defendant is more than ... mere nervousness or excitement or some reluctance to testify." *Id*. at 855-56, 110 S. Ct. 3157.

*United States v. Brown*, 528 F.3d 1030, 1032 (8th Cir. 2008). However, *Craig* did not overrule *Coy v. Iowa*, 487 U.S. 1012, 1016 (1988), which invalidated a conviction involving a child victim who testified from behind a cloth screen when the court had not made a particular finding of necessity. Thus, unless the trial court makes the case-specific findings set forth in *Craig*, efforts to shield alleged child victims from defendants in open court violate the confrontation clause.

The essence of Rosales-Martinez' claim lies in the fact that the district court failed to make a clean record, specifically applying the three *Craig* factors to the testimony of the child either immediately before or during the second trial. Instead, as quoted above, the trial judge incorporated by reference the ruling regarding the child's deposition testimony. Certainly, the lack of documentation in the record is problematic. Ideally, the court would make the *Craig* findings expressly in a trial-related order. However, a state court's failure to conform to best practice is not, in and of itself, grounds for habeas relief. Here, while the trial court failed to separately consider the *Craig* factors during the second trial, the court relied on previous findings made on the record with regard to the child's deposition. The Iowa Court of Appeals stated:

We conclude the district court applied the proper law in considering whether A.C. should be allowed to testify via closed circuit television. The court's findings in this regard are supported by substantial evidence, which included case-specific testimony regarding the probable effect on A.C.'s testimonial capacity and emotional makeup.

*Rosales-Martinez*, 2003 WL 21229134 at *3. In making this finding, the court cited testimony from the district court's hearing:

The district court held a hearing prior to A.C.'s testimony at trial in which Karen Gotto, A.C.'s therapist, and Kay Andrews, A.C.'s foster mother, testified. Gotto testified about A.C.'s extreme fear of Martinez that manifested itself in enuresis,[3] constant questioning of her safety, and other "signs of terror." She opined that testifying in Martinez's presence would be very traumatizing and may cause A.C. to refuse to share the truth about what happened. Andrews testified that on one occasion when they ran into Martinez at a parade, A.C. was "scared spitless." She also noted A.C.'s constant worrying about her safety should they meet him again. Finally, she testified to her belief that A.C. would possibly lose her ability to testify truthfully in the presence of Martinez.

*Rosales-Martinez*, 2003 WL 21229134 at *3. In addition to testimony set out above, Gotto testified that the child got anxious when driven past Rosales-Martinez' work place. Doc. No. 34-3 at 25. Additionally, the child had difficulty talking after encountering Rosales-Martinez. Doc. No. 34-3 at 26. Based on all of this evidence, the state court found that, "A.C. would suffer serious trauma caused by testifying in the physical presence of the defendant and that it would impair A.C.'s ability to communicate and that the protective measures stipulated to by the parties endorsed by the Court are necessary to protect A.C. from trauma."

Thus, the state trial court made findings that correspond to the three *Craig* factors: (1) use of the closed-circuit television procedure was necessary to protect the welfare of

---

[3] Enuresis is "involuntary discharge or leakage of urine." *See* Stedman's Medical Dictionary (2014).

the child; (2) the child witness would have been traumatized, not by the courtroom generally, but by the presence of the defendant; and (3) the emotional distress suffered by the child witness in the presence of the defendant is more than mere nervousness or excitement or some reluctance to testify. Because the trial court applied the *Craig* framework and made findings that are supported by the record, I find no confrontation clause violation, much less an error that would allow habeas relief under the strict standards set out above.[4] Rosales-Martinez' objection as to this claim will be overruled.

### b.    Harmless Error

Judge Williams made the alternative finding that "[i]f the court erred in permitting the victim to testify by closed-circuit television, then it was not harmless error because the court concludes that the guilty verdict rendered in this case was surely unattributable to the error." Doc. No. 49 at 17. The respondent objects to this finding, contending that Judge Williams applied the wrong legal standard. Because I have found that the state court did not error in allowing the child witness to testify via closed-circuit television, this issue is moot. Respondent's objection will be overruled.

---

[4] Rosales-Martinez cites *Lomholt v. Burt*, 219 F. Supp. 2d 977, 995-96 (N.D. Iowa 2002), in which this court stated that a child's trauma at being near the defendant must be so severe it would impede the child's ability to communicate. In that case, there was evidence that the child was *not* frightened of the defendant. Regardless, the court stated, "while this court might not have made such a finding on the record presented, in light of the deference and presumption of correctness to which the trial court's factual determination of 'trauma' is entitled . . . the court cannot say that the trial court's finding that there was 'credible testimony that testifying in the physical presence of the defendant would be traumatic to each of the alleged victims,' . . . as so lacking in evidentiary support in the record that it was 'unreasonable.'" *Lomholt*, 219 F. Supp. 2d at 995 (internal citations omitted).) Similarly, in this case the record supports the trial court's finding of trauma.

**B.** **Prosecutorial Misconduct**

**1.** **Rosales-Martinez' Objection**

Again, Rosales-Martinez' argument largely mirrors the one made in his original brief. Specifically:

> During the proceedings at the trial court level, the court excluded testimony via motion in limine which prevented the State from offering evidence from [one expert], who was prepared to testify that it is not uncommon in a sexual abuse case for physical tests to come up negative. (See Motion in Limine, App. p. 73; Order, App. pp. 78-81). Despite this pretrial ruling, similar evidence came into the record via another witness, though, and when counsel made a motion for mistrial, it was denied. . . The court found that the jury had heard that [another expert] was not surprised by the negative finding, and that the ruling on the motion in limine directed the State to withhold that evidence from the jury. (Tr. p. 230) (App. pp. 273-274). The court also noted that the ruling on the motion in limine directed counsel to "caution their witnesses", and that the complained of testimony was not included in the minutes filed by the State. (Tr. pp. 231-233) (App. pp. 274-277). The court further held that the state violated the order on the motion in limine and that the offer of the inadmissible evidence was attributable to the State. However, the trial court overruled the motion form mistrial (Tr. pp. 240-241) (App. pp. 278-279), and admonished the jury not to consider the testimony. (Tr. pp. 250-251) (App. pp. 279-281). The Iowa Court of Appeals also rejected Petitioner's request for a mistrial.

Doc. No. 53 at 9-10. Rosales Martinez argues that Judge Williams, like the Iowa Court of Appeals, erred in finding that the cautionary instruction issued by the trial court was sufficient to cure the alleged prosecutorial misconduct and that Rosales-Martinez was entitled to a mistrial.

**2.** **Analysis**

As stated above, Judge Williams found that Rosales-Martinez' prosecutorial misconduct claim fails for a number reasons. I agree. In his petition, Rosales-Martinez argued:

Trial counsel was also ineffective due to the failure to object to prosecutorial misconduct, which included, but is not limited to, improper questioning of the Petitioner regarding his ability to view the testimony of other witnesses before testifying, meet with his attorney and review the evidence before testifying, as well as other inflammatory comments from the prosecutor.

Doc. No. 7 at 3. That *de minimis* allegation from the petition became the above-quoted argument in Rosales-Martinez' merits brief, that the prosecutor erred by introducing expert testimony previously excluded. Doc. No. 39 at 12-14.

Rosales-Martinez raised and exhausted the underlying issue before the Iowa state courts. *See Rosales-Martinez*, 2003 WL 21229134 *1-2. However, the underlying claim clearly fails on its merits. First, as noted by Judge Williams, the proffered testimony does not clearly violate any constitutional standard. *See United States v. Kirkie*, 261 F.3d 761, 765-66 (8th Cir. 2001) (allowing similar expert testimony in a sex crime case). Moreover, immediately after the testimony was admitted, defense counsel objected. The trial court struck the testimony and gave a curative instruction. As the United States District Court for the Southern District of Iowa has explained:

A finding of prosecutorial misconduct hinges more on the misconduct's effect on the proceedings than what is actually said. *Darden v. Wainwright*, 477 U.S. 168, 181, 106 S. Ct. 2464, 2471, 91 L.Ed.2d 144 (1986). Not every improper statement calls for a new trial or a reversal of the judgment of conviction. *United States v. Kenyon*, 481 F.3d 1054, 1066 (8th Cir. 2007) (*quoting United States v. Pierce*, 792 F.2d 740, 742 (8th Cir. 1986)). The comments must be so prejudicial that it "infect[s] the trial with unfairness as to make the resulting conviction a denial of due process." *Id*. Three factors are then used to assess the prejudicial impact on the defendant: "1) the cumulative effect of the misconduct; 2) the strength of the properly admitted evidence; and 3) the curative actions taken by the district court." *United States v. Wadlington*, 233 F.3d 1067, 1077 (8th Cir. 2000); *United States v. Boesen*, 541 F.3d 838, 845 (8th Cir. 2008); *Bryant*, 349 F.3d at 1096. Iowa courts consider two additional, but related factors, of 1) the significance of the misconduct to the central issues in the case and 2) the extent to which the state invited or instigated the misconduct. *State v. Graves*, 668 N.W.2d 860, 869 (Iowa 2003).

*Garrison v. Burt*, 707 F. Supp. 2d 945, 959 (S.D. Iowa 2010). The alleged misconduct in this case had no cumulative effect. As I will discuss in detail below, there was substantial evidence against Rosales-Martinez and the court struck the allegedly improper statement. Additionally, juries are presumed to follow curative instructions. *United States v. Gardner*, 396 F.3d 987, 993 (8th Cir. 2005). Accordingly, Rosales-Martinez cannot show prejudicial prosecutorial misconduct.

Additionally, Rosales-Martinez' prosecutorial misconduct claim is couched in terms of a claim for ineffective assistance of counsel (that is, he alleges that his counsel was ineffective for allowing the jury to hear the prohibited testimony). However, Rosales-Martinez did not present this particular ineffective assistance of counsel claim to the Iowa courts during his PCR case. *See* Doc. No. 33-7. Accordingly, the claim is procedurally barred. Finally, even if Rosales-Martinez' ineffective assistance claim was viable, it too fails on the merits. To demonstrate that he received ineffective assistance of counsel under the *Strickland* standard, Rosales-Martinez must show (1) his counsel's performance was deficient, and (2) the deficient performance prejudiced his defense. *Guzman-Ortiz v. United States*, 849 F.3d 708 (8th Cir. 2017). Prior to trial, Rosales-Martinez' attorney sought to preclude similar testimony via a motion in limine. The trial court granted that motion and excluded testimony about the frequency of physical evidence in similar sex abuse cases. At trial, Rosales-Martinez' counsel immediately objected when the prosecutor asked a question that seemed designed to elicit prohibited testimony. Rosales-Martinez' counsel won the objection, won a curative instruction, and then requested, but was not granted, a mistrial. In short, Rosales-Martinez' counsel's performance was not deficient on this issue. Accordingly, Rosales-Martinez cannot show ineffective assistance.

For all of these reasons, Rosales-Martinez' objection as to this claim will be overruled.

## C.   Other Ineffective Assistance Claims

Rosales-Martinez makes three additional ineffective assistance of counsel claims. The first concerns testimony from a police officer, Cole, who testified about Rosales-Martinez' invocation of his right to remain silent. The second is based on the prosecutor's cross-examination of Rosales-Martinez, during which Rosales-Martinez was questioned about whether hearing the testimony of other witnesses influenced his answers. The third is based on his counsel's preservation of the confrontation clause issue discussed above.

### 1.   Rosales-Martinez' Objection

Rosales-Martinez repeats his original arguments as to why he believes the admission of Cole's testimony was the result of ineffective assistance of counsel:

> Amendments VI and XIV to the United States Constitution guarantee criminal defendants to the assistance of counsel, and this right is clearly established by the Supreme Court in *Strickland v. Washington*, 446 U.S. 668, 686, 104 S.Ct. 2052, 2063, 80 L.Ed.2d 674, 692 (1984). . .
>
> At trial, the prosecutor elicited testimony from Officer Chris Cole, of the Storm Lake Police Department, which violated Petitioner's rights pursuant to Amendment V, right against self-incrimination, and VI, right to counsel, as well as the due process clause of Amendment XIV. Officer Cole testified regarding his attempts to contact Petitioner, which were unsuccessful. (Tr. pp. 24-25) (App. pp. 88-90).

Doc. No. 53 at 11-12. Cole testified that as he investigated the underlying accusations, Rosales-Martinez' attorney informed Cole that Rosales-Martinez would not cooperate. Cole further testified that after Rosales-Martinez was arrested, he stated he was innocent, invoked his right to remain silent and requested counsel. Rosales-Martinez' trial attorney did not object to this testimony. Citing *Doyle v. Ohio*, 426 U.S. 610 (1976), Rosales-Martinez argues:

> The state court's decision is an unreasonable application of *Doyle* and *Strickland*. There was no strategic reason for failing to contest the prosecutor's questions. Even if there was a strategic reason, the fact that

counsel's decisions are made for tactical reasons does not immunize the
decision from a Sixth Amendment challenge. *Kellogg v. Scurr*, 741 F. 2d
1099, 1102 (8th Cir. 1984). Accordingly, the failure to lodge a timely
objection to these questions violated Petitioner's right to effective assistance
of counsel.

Doc. No. 53 at 12-13.

Rosales-Martinez has now abandoned his second ineffective assistance claim,
which was based on the prosecutor's cross-examination of Rosales-Martinez. *See* Doc.
No. 53 at 13. As for the third ineffective assistance claim – failure to preserve the
confrontation clause issue – Rosales-Martinez argues that if his original trial counsel
failed to preserve that issue on appeal, such failure amounted to ineffective assistance.

### 2.    *Respondent's Objection*

In his brief, Rosales-Martinez raised multiple ineffective assistance of counsel
claims and argued that each prejudiced his case. He also argued that in the alternative,
the cumulative effective of the various violations resulted in prejudice. In rejecting the
cumulative effect argument, Judge Williams stated, "I find trial counsel was not
ineffective in any respect, and, therefore, petitioner's cumulative error argument is
moot." Doc. No. 49 at 29. Respondent objects to that finding, citing *Wainwright v.
Lockhart*, 80 F.3d 1226, 1233 (8th Cir. 1996), and *Johnson v. United States*, 860
F.Supp.2d 663, 765 (N.D. Iowa 2012), to argue that a federal court cannot consider the
cumulative effect of multiple violations because the Supreme Court has not affirmatively
authorized cumulative error review.

### 3.    *Analysis*

Regarding preservation of the confrontation clause claim, Judge Williams stated:

Petitioner, however, asserts that his procedural default must be
excused, however, because his trial counsel was constitutionally ineffective.
Doc. 45, at 2. . . The Iowa Court of Appeals considered petitioner's

> ineffective assistance of counsel claim, *Rosales-Martinez*, 2003 WL
> 21229134, at *2, so, on habeas review, this court's task is to determine
> whether the State court erred in applying Supreme Court precedent or
> unreasonably determined the facts when the State court found counsel was
> not ineffective. 28 U.S.C. § 2254(d). For the reasons set forth above, I
> find that petitioner cannot show he was prejudiced by counsel's failure to
> object to the procedure of having the victim testify by closed-circuit
> television. Because petitioner cannot meet the second prong of the
> *Strickland* test, he cannot establish that he received ineffective assistance of
> counsel.

Doc. No. 49 at 20-21. I agree. I have found that there was no constitutional violation in allowing the child victim to testify by closed-circuit television. Thus, Rosales-Martinez cannot show prejudice under the *Strickland* test. Moreover, as set out above, I do not agree that trial counsel consented to the closed-circuit television testimony nor that appellate counsel actually failed to raise the error. Put another way, there was no violation because the trial court made a three-factor finding that complied with *Craig* before allowing the child victim to testify by closed-circuit television. But even if there had been a violation, Rosales-Martinez' counsel continually objected to the closed-circuit television procedure and then later argued that allowing testimony via closed-circuit television was improper. There was no ineffective assistance of counsel regarding the confrontation clause issue.

The issue with Cole's testimony is not so clear cut. I agree with Judge Williams that, "the prosecutor's questions were improper." Doc. No. 49 at 26. An officer should not testify about a defendant's invocation of his constitutional rights. However, as Judge Williams stated, "on habeas review, this court's task is to determine if the State court's [*Strickland*] decision that trial counsel was not ineffective was contrary to, or involved an unreasonable application of, federal law." *Id*. at 26-27. Under that doubly-deferential standard, Rosales-Martinez has failed to establish reversible error.

During the PCR proceedings, the Iowa District Court rejected the ineffective assistance claim regarding Cole's testimony, stating:

Trial counsel asserted that he chose not to object to this testimony from Officer Cole as part of a planned trial strategy. Trial counsel claims this strategy was the same as used at the first trial, which resulted in a deadlocked jury. Trial counsel's strategy recognized that Applicant's credibility and ability to connect with the jury were important considerations, and so counsel took a limited approach to objections. "Lack of success does not amount to ineffective assistance of counsel." *Osborn v. State*, 573 N.W.2d 917, 924 (Iowa 1998). Trial counsel contends that Officer Cole's testimony conveyed to the jury that first Applicant stated he didn't commit the accused act, and then he said he didn't want to talk to the officer. At the conclusion of Officer Cole's testimony, it was clear that Applicant denied the allegations. Trial counsel claims he chose not to object because he thought the jury would be wondering how Applicant responded when the charge came, and he did not object because it was a tradeoff to also let the jury hear that Applicant denied the charge from the beginning. . . The Court finds that trial counsel's strategy was not unreasonable in this situation. The Court acknowledges that Officer Cole's testimony infringed Applicant's constitutional rights, but that trial counsel has articulated a reasonable trial strategy for his limited approach to objections. The court finds it especially persuasive that trial counsel testified he followed the same strategy during Applicant's first trial, which resulted in a hung jury.

Doc. No. 34-7 at 150. The Iowa Court of Appeals agreed:

Addressing the specific claims of prosecutorial misconduct, the district court first found that while Officer Cole's testimony "infringed Applicant's constitutional rights," trial counsel had testified at the postconviction hearing he chose not to object because he wanted the jury to hear that Rosales–Martinez denied the charge from the beginning. The district court found trial counsel had articulated a reasonable trial strategy. . . [W]e agree with the district court's reasoning.

*Rosales-Martinez*, 2011 WL 6740152 *8-9.

Under *Strickland*, courts should avoid second guessing counsel's strategy. *Calkins v. United States*, 795 F.3d 896, 897 (8th Cir. 2015). In this case, trial counsel's strategy, while not without risk, made sense in the context of Rosales-Martinez' innocence-based argument. Specifically, trial counsel sought to show that Rosales-Martinez both denied

and fought the accusations at every stage of the case. Trial counsel's strategy had already resulted in one deadlocked jury. Accordingly, the state court's decision that the failure to object to Cole's testimony was a valid trial strategy, as opposed to ineffective assistance of counsel, was not a violation of clearly established law. Rosales-Martinez has failed to establish ineffective assistance under *Strickland*. As such, his objection will be overruled.

Because I agree that Rosales-Martinez' ineffective assistance claims fail on their merits, I need not reach Judge Williams' alternative holding regarding their cumulative effect, nor the respondent's objection to that holding. That objection will be overruled as moot.

### 4. *Actual Innocence*

### 1. *Rosales-Martinez' Objection*

Rosales-Martinez argues that he is entitled to a new trial based on "the subsequent recantation of trial testimony by Mary Castillo." Doc. No. 53 at 14. Castillo is Rosales-Martinez' wife and the mother of the child victim. Rosales-Martinez states:

> At trial, Mary Castillo (wife of Petitioner) testified in a manner which was consistent with the State's theory of the case, including the allegation that Petitioner was home alone with A.C. when she was not present, and that she had asked A.C. to falsely state that a third party had committed the abuse, and not Petitioner. (Castillo's trial testimony, elicited by the prosecutor, is in the trial transcript at pp. 40-57). Following the trial, Castillo came forward to recant her testimony.

Doc. No. 53 at 14. Specifically, Castillo stated that child had denied the accusations against Rosales-Martinez in private, but Castillo did not testify about that at trial because she believed that her cooperation with the prosecution would ensure that she would maintain custody of her daughter. Rosales-Martinez argues that Castillo's testimony is newly discovered evidence of his actual innocence and that Judge Williams erred in failing to recommend a new trial based on the new evidence.

## 2. *Analysis*

The Supreme Court remains conspicuously vague about whether or not actual innocence is an independent ground upon which Section 2254 habeas relief may be granted. *See McQuiggin v. Perkins*, 133 S. Ct. 1924, 1930-32 (2013). Assuming it is, I will consider the merits of Rosales-Martinez' claim.

The Eighth Circuit has made clear that recanted testimony is viewed with suspicion. *Wadlington v. United States*, 428 F.3d 779, 784 (8th Cir. 2005). Moreover, evidence that is merely relevant or material is not sufficient to establish actual innocence unless it directly rebuts the charged offense. *Id.*; *see also Amrine v. Bowersox*, 128 F.3d 1222, 1230 (8th Cir. 1997) (remand on actual innocence grounds appropriate when *all* witnesses to a crime recanted). Moreover, evidence that was discoverable at the time of trial is merely newly available, not newly discovered. *Weaver v. United States*, 793 F.3d 857, 865 (8th Cir. 2015). Finally, evidence that goes to a witness' credibility is normally not enough to establish actual innocence. *See Cox v. Burger*, 398 F.3d 1025, 1031 (8th Cir. 2005).

In this case, the child victim testified about the alleged sexual abuse. The child provided graphic direct evidence of the crime charged against Rosales-Martinez:

> A.C. stated Rosales–Martinez touched her "private" with his hand more than once. She said Rosales–Martinez pulled her clothes down and took his boxers off—"He put his private in my private." In addition, A.C. testified that Rosales–Martinez touched her "buppy" with his hand and his "private." A.C. later added that Rosales–Martinez's mouth also touched her privates. She circled areas on anatomical drawings of a male and female indicating what she meant by "private" and "buppy": A.C.'s "private" was her vaginal area, her "buppy" was her buttocks area; defendant's "private" was his penis. A.C. stated these incidents happened when Castillo was at work and Moses was in a different room.

*Rosales-Martinez*, 2011 WL 6740152 *3. The child's testimony was supported by both Castillo's testimony and the testimony of the child's social worker. While Castillo's recantation (which must be viewed suspiciously) would have affected her credibility, it

does not, even if true, overcome the high bar to establish actual innocence in light of the testimony provided by the victim. Thus, I agree with Judge Williams that Rosales-Martinez' claim of actual innocence fails on the merits. His objection as to this claim will be overruled.

## IV.    CERTIFICATE OF APPEALABILITY

A certificate of appealability may be granted only when the petitioner "has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2); *see also Miller-El v. Cockrell*, 537 U.S. 322, 336-37 (2003); *Garrett v. United States*, 211 F.3d 1075, 1076-77 (8th Cir. 2000); *Mills v. Norris*, 187 F.3d 881, 881 n.1 (8th Cir. 1999); *Carter v. Hopkins*, 151 F.3d 872, 873-74 (8th Cir. 1998); *Ramsey v. Bowersox*, 149 F.3d 749 (8th Cir. 1998); *Cox v. Norris*, 133 F.3d 565, 569 (8th Cir. 1997). "A substantial showing is a showing that issues are debatable among reasonable jurists, a court could resolve the issues differently, or the issues deserve further proceedings." *Cox*, 133 F.3d at 569. Thus, "[w]here a district court has rejected the constitutional claims on the merits, the showing required to satisfy § 2253(c) is straightforward: The petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Miller-El*, 537 U.S. at 338 (*quoting Slack v. McDaniel*, 529 U.S. 473, 484 (2000)).

In this case, Rosales-Martinez has failed to make the necessary showing to receive a certificate of appealability with regard to all but one issue. As discussed above, Rosales-Martinez' case presents a novel situation in which the state trial court made its three-factor *Craig* determination long before trial, in the context of a separate hearing regarding a deposition. If the trial court subsequently reconsidered the issue, that reconsideration was not adequately addressed in the record. While I have concluded that the initial *Craig* determination was sufficient to support the trial court's decision to allow the child victim to testify via closed-circuit television at trial, I also believe that

reasonable-minded jurists could debate this point. Accordingly, I will grant a certificate of appealability solely with regard to Rosales-Martinez' confrontation clause claim.

## V. CONCLUSION

Based on my *de novo* review:

1. I hereby **overrule** all of Rosales-Martinez' objections (Doc. No. 53) and all of respondent's objections (Doc. No. 54) to the Report and Recommendation (Doc. No. 49).

2. The Report and Recommendation is hereby **adopted** as set forth herein.

3. The petition (Doc. No. 1) for relief pursuant to 28 U.S.C. § 2254 is hereby **dismissed with prejudice**.

4. A certificate of appealability is **granted** with regard to the confrontation clause claim, as discussed above. A certificate of appealability is **denied** with regard to all other claims.

**IT IS SO ORDERED.**

**DATED** this 29th day of March, 2017.

_____
LEONARD T. STRAND
CHIEF UNITED STATES DISTRICT JUDGE